IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ISABELLA BERNAL, Individually and on Behalf of All Others Similarly Situated, <br>     Plaintiff, <br><br> v. <br><br> BACKSLIDERS, LLC dba "South Austin Beer Garden," RYAN THOMAS, and DAVID B. PEARCE, <br>     Defendants. | § § § § § § § § § § § § | Civil Action No. 1:23-CV-00471-RP |

## <u>DEFENDANTS' COUNTERCLAIMS</u>

TO THE HONORABLE JUDGE OF SAID COURT:

Defendants Backsliders, LLC, dba South Austin Beer Garden, Ryan Thomas and David Pearce file Defendants' Counterclaims and in support thereof would show the Court the following:

### I.     INTRODUCTION

1. Plaintiff Isabella Bernal previously worked for Defendant Backsliders, LLC, d/b/a "South Austin Beer Garden" ("SABG"). In July 2021, SABG fired her for stealing from the company.

2. Defendants assert the following claims against Plaintiff.

### II.     FACTUAL AND PROCEDURAL BACKGROUND

3. Plaintiff Isabella Bernal began working as a bartender for SABG in July 2021.

4. In July 2022, Vincent Vieluf, a bartender at SABG, witnessed Ms. Bernal close out a customer's tab and walk away with the change in her hand. Mr. Vieluf continued

watching Ms. Bernal because it is standard policy to remit any tips to the tip jars that SABG uses for its tip pool.  He saw Ms. Bernal look around for a bit, and then, when she saw he was watching her, she approached him and asked if he keeps tips from customers who came to the bar to see him.  He told Ms. Bernal that he does not do that, nor do any of the other staff at SABG, because the staff is a small group that depends on its shared tip policy.

5. Ms. Bernal told Mr. Vieluf that she had pocketed tips in the past and that she believed she was entitled to do so when she felt that a customer had come to the bar specifically to see her.  Due to this incident, David Pearce decided that Ms. Bernal should be moved from working at SABG's outside bar to its indoor bar, where her actions would be more monitored.

6. As is typical in the food and beverage industry, SABG has what are known as complimentary tabs or "comp tabs," and "spill tabs."  Every bartender gets their own small comp tab that they can use to comp drinks to customers for purposes of business development and customer relations.  Each bartender is given a $30 comp tab daily. These do not carry over, so if they are not used on that night's shift, they cannot be used later.  If a bartender needs or wants to give out extra "comps," they must check with the head bartender for the night to ask for approval.  Bartenders who use up their comp tab are not permitted to charge additional comped drinks to the spill tab.

7. The spill tab is a bar-wide tab that is used to account for drinks that are lost through spillage.  Bartenders do not each have their own personal spill tab, as it is not expected that bartenders will routinely spill multiple drinks every shift.  Rather, the spill tab is a set

Case 1:23-cv-00471-RRP  Document 731  Filed 08/25/23  Page 2 of 6

amount of money meant to cover all drinks spilled by all staff members on any given night.

8. The majority of drinks that are charged to SABG's spill tab are beer drinks, because that is what frequently spills when drinks are poured from the tap.

9. In July 2022, Christopher Borke, SABG's General Manager and head bartender, started noticing unusual activity on SABG's spill tab. Specifically, he started noticing more liquor drinks were being charged to the spill tab, and later into the evening.

10. After noticing this trend for several weeks, he decided to investigate further, and reviewed security footage of the bar on one of the nights that had unusual charges to the spill tab.

11. When he reviewed the security footage, he witnessed Plaintiff Isabella Bernal take drink orders from several individuals, serve them drinks, ring up the orders in SABG' "Point-of-Sale" ("POS") system, and not take payment for the drinks.

12. Mr. Borke recognized the individuals that Ms. Bernal was serving as friends of hers who worked with her then-fiancé at a bar down the street from SABG. These individuals had come to SABG on many other occasions, which is why he recognized them.

13. Mr. Borke saw that the drinks Ms. Bernal served in the video matched the drinks that were charged to the spill tab around the same time that evening. He also confirmed that no other staff members had accessed SABG's POS system during that time. He therefore concluded that the drinks that were charged to the spill tab around this time were the drinks that Ms. Bernal had served to her friends.

14. Based on these facts, David Pearce made the decision to terminate Ms. Bernal. Mr. Pearce was out of town at the time, and asked Mr. Borke to have the discussion with Ms.

Bernal concerning her termination. When Mr. Borke told Ms. Bernal that she was being terminated for giving her friends free drinks and improperly charging those drinks to the spill tab, Ms. Bernal admitted that she had done exactly that, but claimed that she believed this was permitted.

### III.    CAUSES OF ACTION

#### Theft

15. Texas Civil Practices and Remedies Code § 134.003(a) provides that "[a] person who commits theft is liable for the damages resulting from the theft."

16. Texas Civil Practices and Remedies Code § 134.002(2) defines "theft" as "unlawfully appropriating property or unlawfully obtaining services as described by Section 31.03, 31.04, 31.06, 31.07, 31.11, 31.12, 31.13, or 31.14, Penal Code.

17. In two different respects, Ms. Bernal repeatedly committed multiple individual instances of theft under Texas Penal Code § 31.03 because she "unlawfully appropriated property with the intent to deprive the owner of property." First, she committed theft every time she kept tips to herself that should have gone to the company's tip pool, while simultaneously claiming a proportionate share of the tip pool. Second, Ms. Bernal committed theft every time she served free drinks to her friends and did not charge them for those drinks.

18. Furthermore, Ms. Bernal committed theft of services under Penal Code § 31.04 because she "intentionally or knowingly secured performance of the service [of drinks] by deception." Tex. Penal Code § 31.04.

19. Defendants seek to recover the full value of the property Ms. Bernal stole, as well as penalties and attorneys' fees as authorized by Civ. Prac. & Rem. Code § 134.005(a)(1) and (b).

## IV.   CONCLUSION

Defendants, Backsliders, LLC, dba South Austin Beer Garden, Ryan Thomas and David Pearce, pray the Court that upon trial hereof, Plaintiff recover nothing and that Defendants recover their damages in an amount to be proved at trial, as well as costs and attorneys' fees, and for such other and further relief as they may show themselves justly entitled.

Respectfully Submitted,

/s/ *William T. Palmer*
Thomas A. Nesbitt
tnesbitt@dnaustin.com
Texas Bar No. 24007738
Laura J. Goodson
lgoodson@dnaustin.com
Texas Bar No. 24045959
William T. Palmer
wpalmer@dnaustin.com
Texas Bar No. 24121765
DeShazo & Nesbitt L.L.P.
809 West Avenue
Austin, Texas 78701
512/617-5560
512/617-5563 (Fax)

**ATTORNEYS FOR DEFENDANTS BACKSLIDERS, LLC, DBA SOUTH AUSTIN BEER GARDEN, RYAN THOMAS, AND DAVID PEARCE**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 25th day of August 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Aaron Charles de la Garza
Aaron Charles de la Garza, PLLC
509 W. 18th Street
Austin, Texas 78701
aaron@adlglaw.com

Douglas B. Welmaker
Welmaker Law, PLLC
409 Fredonia, Suite 118
Longview, Texas 75601
doug@welmakerlaw.com

                                /s/ *William T. Palmer*
                                William T. Palmer